IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                    No.    13-cr-0980 MCA
                                                        16-cv-0596 MCA/SMV

DONOVAN MUSKETT,

    Defendant.

## MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before me on Defendant Donovan Muskett's 28 U.S.C. § 2255 Motion to Vacate Sentence, filed June 16, 2016. [CR Doc. 56; CV Doc. 2]. The United States responded on August 15, 2016. [CR Doc. 63; CV Doc. 7]. Muskett replied on October 3, 2016. [CR Doc. 70; CV Doc. 14]. The Honorable M. Christina Armijo, Chief United States District Judge, referred this matter to me for analysis and a recommended disposition. [CV Doc. 15]. Having considered the briefing, relevant portions of the underlying criminal record, and relevant authorities, and being otherwise fully advised in the premises, I find that Muskett's conviction under 18 U.S.C. § 924(c) was not improper, irrespective of whether that provision's residual clause is unconstitutional. I recommend that his motion be denied.

### I. Background

On November 6, 2013, Muskett pleaded guilty to Count 3 of an indictment,[1] which charged him with: (1) Assault with a Dangerous Weapon, in violation of 18 U.S.C. §§ 1153,

---

[1] Muskett was initially indicted on March 27, 2013. Presentence Report at 3. A superseding indictment was subsequently filed on August 27, 2013. *Id.* Muskett pleaded guilty to Count 3 of the superseding indictment. *Id.*

1

113(a)(3); (2) Aggravated Burglary, in violation of 18 U.S.C. § 1153 and NMSA 1978, § 30-16-4(A); (3) Using, Carrying, Possessing, and Brandishing a Firearm During and in Relation to and in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c); and (4) Negligent Child Abuse, in violation of 18 U.S.C. §§ 1153, 13 and 1978 NMSA, § 30-6-1(D)(1). Presentence Report ("PSR") at 3. The U.S. Sentencing Guidelines Manual ("Guidelines") imposes a minimum term of imprisonment of 84 months for violation of § 924(c). PSR at 7; Guidelines § 2K2.4.

On March 11, 2014, the Honorable Alan B. Johnson, United States District Judge visiting from the District of Wyoming, sentenced Muskett to 84 months' imprisonment. [CR Doc. 54] at 2. As part of his plea agreement, Muskett waived his right to appeal his conviction and sentence, so long as the sentence did not exceed the statutory maximum. [CR Doc. 46] at 7. The waiver extended to collateral attacks on his conviction and sentence, with the exception of ineffective-assistance-of-counsel claims pertaining to the entry of the plea or the waiver. *Id.* Muskett did not appeal his sentence. The instant case is his first motion under § 2255.

## II. Motions under § 2255 and *Johnson II*

Pursuant to 28 U.S.C. § 2255(a), a "prisoner in custody" pursuant to a federal conviction may "move the court . . . to vacate, set aside or correct the sentence" if it "was imposed in violation of the Constitution or laws of the United States."

In *Johnson v. United States* ("*Johnson II*"), 135 S. Ct. 2551, 2557 (2015), the Supreme Court held that the so-called "residual clause" of the definition of "violent felony" in the Armed

Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B),[2] was unconstitutionally vague. The ACCA defined "violent felony" as follows:

> any crime punishable by imprisonment for a term exceeding one year . . . that —
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

*Id.* (emphasis added). The closing words of this definition, italicized above, have come to be known as the "residual clause."

The Court explained that the residual clause left "grave uncertainty" about "deciding what kind of conduct the 'ordinary case' of a crime involves." *Johnson II*, 135 S. Ct. at 2557. That is, the residual clause "denie[d] fair notice to defendants and invite[d] arbitrary enforcement by judges" because it "tie[d] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Id.* Second, the ACCA's residual clause left "uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 2558. By combining these two indeterminate inquiries, the Court held, "the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.* On that ground it held the residual clause void for vagueness. *Id.*

Soon thereafter, the Court determined that the ruling in *Johnson II* was substantive (as opposed to procedural) and, therefore, had "retroactive effect in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016). Accordingly, *Welch* opened the door for

---
[2] Throughout this opinion, I use the term "ACCA" to refer to § 924(e).

individuals sentenced under the residual clause of the ACCA's violent-felony definition to move to vacate their sentences as unconstitutional under § 2255.

Muskett, however, was not sentenced under § 924(e), nor does he claim he was. He was convicted—and subject to a minimum term of imprisonment—under § 924*(c)*. Conviction under that provision results where "any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." § 924(c)(1)(A). Like the definition of "violent felony" in § 924(e)(2)(B), the definition of "crime of violence" in § 924(c)(3) contains a residual clause, italicized below:

> [T]he term "crime of violence" means an offense that is a felony and—
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (B) *that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.*

§ 924(c)(3). The Supreme Court has not ruled on whether *Johnson II* applies to invalidate the residual clause of § 924(c). The issue has divided the circuit courts. *See Lloyd v. United States*, 2016 WL 5387665, at *3 (D.N.M. Aug. 31, 2016) (collecting cases). It is presently on appeal before the Tenth Circuit, *United States v. Hopper*, No. 15-2190.

### III. **Muskett's § 2255 Motion**

Muskett's conviction under § 924(c) was based on two predicate offenses:[3] New Mexico aggravated burglary, NMSA 1978, § 30-16-4, and federal assault with a dangerous weapon,

---

[3] Conviction under 924(c) does not require that the defendant actually have been convicted of the predicate crime of violence. It requires only that a firearm be carried "during and in relation to any crime of violence" "for which the person *may be prosecuted*." § 924(c)(1)(A). In Muskett's case, he was charged with aggravated burglary and

18 U.S.C. § 113(a)(3). His conviction was based on a determination that one or both of those offenses qualified as a "crime of violence" under § 924(c)(3).

In his motion, Muskett argues that the residual clause of § 924(c) mirrors the residual clause of § 924(e)(2)(B). *See* [Doc. 2][4] at 3–6. He contends the Supreme Court's holding in *Johnson II* (i.e., that the ACCA's residual clause is unconstitutionally vague) should apply equally to the residual clause in § 924(c). *Id.* He next argues that the predicate offenses on which his § 924(c) conviction relied could have qualified as crimes of violence *only* under that provision's residual clause. *Id.* at 6–10. Therefore, he concludes, because the residual clause is unconstitutional in light of *Johnson II*, and there is no other basis on which his predicate offenses could qualify as crimes of violence, his § 924(c) conviction should be vacated. *Id.* at 12. He also argues that his waiver of the right to collaterally attack his conviction and sentence should not bar relief. *Id.* at 10–11.

The United States argues first that Muskett's claim is procedurally barred because he did not raise this issue on direct appeal and cannot demonstrate either good cause or actual innocence. [Doc. 7] at 4–6. It further argues that, even if Muskett's claim were not procedurally barred, his conviction under § 924(c) stands even in the wake of *Johnson II*. The government contends that *Johnson II* does not invalidate the residual clause of § 924(c). *Id.* at 7–11. And, even if it did, Muskett's predicate offense of assault with a dangerous weapon would still qualify as a crime of violence under the force clause.[5] *Id.* at 11–16. Finally, the government contends

---

assault with a dangerous weapon, but those counts were ultimately dismissed as part of his plea agreement. PSR at 3; [CR Doc. 54] at 1.

[4] Unless specifically noted otherwise, citations to document numbers refer to the docket in the civil case, case number 16-cv-0596 MCA/SMV.

[5] The government does not contend that the predicate offense of aggravated burglary could qualify under the force clause.

that Muskett waived his right to collaterally attack his conviction and requests that the Court enforce the waiver. *Id.* at 16–21.

As an initial matter, I find that Muskett's claim is not barred by procedural default. Proceeding to the merits, I find that his conviction under § 924(c) was not improper. The predicate offense of assault with a dangerous weapon qualifies as a crime of violence under the force clause of § 924(c)(3), irrespective of that provision's residual clause. Therefore, I need not consider whether *Johnson II* invalidates the residual clause of § 924(c). Nor do I need to consider whether Muskett's appellate waiver was valid.

## IV. **Muskett's claim is not barred by procedural default.**

In general, claims not raised on direct appeal may not be raised on collateral review unless the petitioner can either "show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains," or "show that a fundamental miscarriage of justice will occur if his claim is not addressed." *United States v. Hollis*, 552 F.3d 1191, 1193–94 (10th Cir. 2009) (quoting *United States v. Bolden*, 472 F.3d 750, 751–52 (10th Cir. 2006)). Muskett has shown both cause and prejudice.

A petitioner has cause for his failure to raise a claim where he shows "that the factual or legal basis for [the] claim was not reasonably available to counsel." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). This standard is satisfied where a Supreme Court decision "explicitly overrule[s] one of [its] precedents," "overtur[ns] a longstanding and widespread practice . . . which a near-unanimous body of lower court authority has expressly approved," or "disapprov[es] a practice [the Court] arguably ha[d] sanctioned in prior cases." *Reed v. Ross*, 468 U.S. 1, 17 (1984). Prior to *Johnson II*, Muskett's claim that the residual clause of § 924(c) is

6

unconstitutionally vague was not reasonably available to him. Then-binding Supreme Court precedent provided that the ACCA's residual clause was *not* unconstitutional. *See Sykes v. United States*, 564 U.S. 1, 15 (2011) (holding that the ACCA's residual clause "states an intelligible principle and provides guidance that allows a person to conform his or her conduct to the law" (internal quotation marks omitted)); *James v. United States*, 550 U.S. 192, 210 n.6 (2007). *Johnson II* expressly overruled this precedent. 135 S. Ct. at 2563. It provided a novel legal basis on which Muskett could bring his claim, one that was not previously reasonably available to him. Muskett has shown cause for his procedural default.

To establish prejudice, a petitioner must show that there is a reasonable probability that, without the alleged error, the result of the proceedings would have been different. *Strickland v. Greene*, 527 U.S. 263, 289 (1999). In this case, Muskett pleaded guilty to using a firearm during the commission of a crime of violence. *See* [CR Doc. 54] at 2. Muskett's conviction was based on the parties' understanding that his predicate offenses constituted "crimes of violence" under § 924(c). If, as Muskett contends, his predicate offenses no longer meet the definition of "crime of violence" under § 924(c), then his conviction is based on legal error and the outcome of the proceedings would have been different but for this alleged error. Muskett has shown prejudice. *See United States v. Castillo*, 16-0622 JCH/KRS, [Doc. 15] at 6–7 (D.N.M. Mar. 10, 2017) (finding cause and prejudice excusing procedural default on defendant's § 2255 claim challenging residual clause of § 924(c)); *see also*, *e.g.*, *Wade v. United States*, 2017 WL 1042055, at *2 (C.D. Cal. Mar. 16, 2017) ("If the court mistakenly treated [the predicate offense] as a crime of violence, there is a reasonable probability that, but for the error, [defendant's] sentence would have been different."); *Haynes v. United States*, 2017 WL 634496, at *10

7

(C.D. Ill. Feb. 16, 2017) (finding that because defendant's conviction under § 924(c) resulted in the imposition of an additional term of imprisonment, "it is obvious that he suffered an actual and substantial disadvantage from these convictions"). Because Muskett has shown cause and prejudice, his § 2255 motion is not barred by procedural default.[6]

### V. Muskett's predicate offense of assault with a dangerous weapon qualifies as a crime of violence under the force clause of § 924(c)(3).

The so-called "force clause" of § 924(c)(3) provides that a predicate offense is a crime of violence where it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." § 924(c)(3)(A). To determine whether a predicate offense qualifies as a crime of violence under the force clause, courts compare § 924(c)(3)(A) with the elements of the underlying offense. Specifically, courts must determine whether the force required for conviction of the predicate offense is sufficient to satisfy the physical force requirement of § 924(c).

In determining whether a predicate offense satisfies the force clause, courts generally apply the "categorical approach." *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013). That is, courts look only to the statutory definition of the prior offense, while ignoring the particular facts of the case. *Id.* At base, courts must determine whether the least culpable conduct criminalized by the underlying offense—here, the least amount of force required to sustain a conviction for assault with a dangerous weapon under 18 U.S.C. § 113(a)(3)—meets the physical force requirement of the force clause. *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013) ("Because we examine what the state conviction necessarily involved, not the facts

---

[6] Muskett also argues that his procedural default should be excused because he can show his "actual innocence." [Doc. 14] at 3 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). Because I find that he has shown cause and prejudice, I need not additionally consider his actual innocence argument.

underlying the case, we must presume that the conviction rested upon [nothing] more than the least of th[e] acts criminalized, and then determine whether even those acts are encompassed by [the force clause]." (last set of brackets added) (internal quotation marks omitted)). In discerning the level of force that gives rise to conviction under the predicate offense, there must be a "*realistic probability*, not a theoretical possibility," that the statute would apply to the conduct contemplated. *United States v. Rivera-Oros*, 590 F.3d 1123, 1133 (10th Cir. 2009) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

### A. Assault with a dangerous weapon under § 113(a)(3) requires the use or threatened use of force capable of causing physical pain or injury to another person.

*1. Assault with a Dangerous Weapon Under § 113(a)(3)*

Muskett's underlying offense was assault with a dangerous weapon, 18 U.S.C. § 113(a)(3). The statute provides, in relevant part:

> **§ 113. Assaults within maritime and territorial jurisdiction**
>
> (a) Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:
>
> . . . .
>
> (3) Assault with a dangerous weapon, with intent to do bodily harm, by a fine under this title or imprisonment for not more than ten years, or both.

The parties do not dispute that Muskett was charged under § 113(a)(3). *See*, *e.g.*, [Doc. 1] at 8–9; [Doc. 7] at 11; *see also* PSR at 3. Applying the categorical approach, then, I will compare the elements of § 113(a)(3) against the force clause of § 924(c)(3).[7]

---

[7] In undertaking such a comparison, I necessarily first find that 18 U.S.C. § 113(a) is divisible into its eight separate subsections. *See generally Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016) (describing the divisibility standard). Though neither party expressly discusses the statute's divisibility, the matter appears undisputed. Given that Muskett was charged under § 113(a)(3), both parties refer only to subsection (a)(3) and compare the force

9

Conviction under § 113(a)(3) requires proof of (1) assault (2) with a dangerous weapon (3) with intent to do bodily harm. The Tenth Circuit has held that since the term "assault" is not defined in § 113(a), it takes on its common law definition: (1) an attempted battery, or (2) putting another in reasonable apprehension of bodily harm. *United States v. McKinney*, 17 F. App'x 808, 811 (10th Cir. 2001) (citing *United States v. Calderon*, 655 F.2d 1037, 1038 (10th Cir. 1981)). The latter method of committing assault requires that "the facts and circumstances must [have been] such as to show that [the victim's] subjective apprehension of bodily harm was 'reasonable.'" *Id.*; *see also United States v. Jojola*, 2000 WL 979107, at *6 (10th Cir. July 17, 2000) (unpublished) (Conviction under § 113(a)(3) required proof that the defendant "used [a dangerous weapon] to intentionally strike or wound [the victim] (or used a display of force that reasonabl[y] caused her to fear immediate bodily harm) and that he acted with the specific intent to do bodily harm."). Conviction under § 113(a)(3) does not require proof of physical contact. *United States v. Duran*, 127 F.3d 911, 915 (10th Cir. 1997) (holding that the offense of "assault by striking, beating or wounding" is not a lesser included offense of assault with a dangerous weapon because the former "requires a physical touching").

As Muskett points out, the term "dangerous weapon" is defined broadly and hinges less on an instrument's innate properties and more on the manner in which it is used. [Doc. 14] at 8–9 ("'[A]lmost any object which as used or attempted to be used may endanger life or inflict great bodily harm . . . or . . . is likely to produce death or great bodily harm'" may be a dangerous weapon under certain circumstances. (quoting *United States v. Johnson*, 324 F.2d 264 (4th Cir.

---

required under that specific provision (and not any other subsection of § 113(a)) against the force clause of § 924(c). *See*, *e.g.*, [Doc. 1] at 8–9; [Doc. 7] at 11. Therefore, I employ the categorical approach to determine whether the least culpable conduct criminalized under § 113(a)(3) satisfies the physical force requirement of the force clause.

1963))); *see also United States v. Estep*, 138 F. App'x 113, 116 (10th Cir. 2005) (large rock constituted a dangerous weapon for conviction under § 113(a)(3) where defendant had used it to strike victim on her head). Further, conviction under § 113(a)(3) requires *use* of a dangerous weapon. *United States v. Bruce*, 458 F.3d 1157, 1164 n.4 (10th Cir. 2005) ("The elements differentiating assault with a dangerous weapon from simple assault are the use of a [dangerous] weapon and the intent to commit bodily harm." (internal quotation marks omitted)); *United States v. Tsosie*, 288 F. App'x 496, 501 (10th Cir. 2008) (defendant's threatening statement of his intent to injure victim using a shank was admissible because it "made more probable the crucial facts" of the attackers' "intent to commit bodily harm, and to do so with a dangerous weapon").

### 2. Physical Force Under § 924(c)

In *Johnson v. United States* ("*Johnson I*"), the Supreme Court interpreted the "physical force" requirement of the force clause of § 924(e)(2)(B) to require "*violent* force—that is, force capable of causing physical pain or injury to another person."[8] 559 U.S. 133, 140 (2010). The Court offered this interpretation in the course of holding that the force required for conviction under a state battery statute—"*any* intentional physical contact, no matter how slight"—was less

---

[8] In *Johnson I*, the Court was interpreting the force clause of the ACCA's definition of "violent felony" in § 924(e)(2)(B). 559 U.S. at 138–40. The force clause of the ACCA is distinct from the force clause at issue in this case, under § 924(c)(3). However, the language of the force clause in § 924(c)(3) is almost identical to that of the ACCA's force clause, as well as that of the Guidelines' definition of "crime of violence." The definition of "physical force" from *Johnson I*, then, applies in equal measure to the force clause of § 924(c), as do other ACCA and Guidelines cases interpreting their respective force clauses. *See United States v. Maldonado-Palma*, 839 F.3d 1244, 1248 (10th Cir. 2016) (relying on interpretation of "physical force" in ACCA case to inform meaning of Guidelines force clause); *United States v. Ramon Silva*, 608 F.3d 663, 671 (10th Cir. 2010) ("Given the similarity in language between the ACCA and [Guidelines], we have occasionally looked to precedent under one provision for guidance under another."); *United States v. Mitchell*, 653 F. App'x 639, 642 (10th Cir. 2016) ("We have consistently applied the same analysis to the career offender provision and the analogous provision of the ACCA where the clauses are virtually identical." (internal quotation marks omitted)). Both ACCA and Guidelines cases are authoritative in interpreting the physical force requirement of § 924(c).

than the ACCA's physical force requirement. *Id.* at 138 (internal quotation marks omitted). In other words, "physical force" under the force clause means more than de minimis touching. *See United States v. Harris*, 844 F.3d 1260, 1264–65 (10th Cir. 2017) ("It is important to keep in mind why it was necessary for the Court [in *Johnson I*] to use the language" of "*violent* force" and "strong physical force"—namely, because the Court "was rejecting the government's argument that physical force means . . . . even the slightest offensive touching." (internal quotation marks omitted)).

The Tenth Circuit has not specifically addressed whether assault with a dangerous weapon under § 113(a)(3) satisfies the force requirement set out in *Johnson I*. However, it has evaluated other similarly worded assault statutes in light of *Johnson I*'s "physical force" requirement. Recently, in *United States v. Maldonado-Palma*, 839 F.3d 1244 (10th Cir. 2016), the Tenth Circuit held that New Mexico aggravated assault with a deadly weapon was categorically a crime of violence under the Guidelines' force clause, even where the underlying assault was committed through "'the use of insulting language toward another impugning his honor, delicacy or reputation.'" *Id.* at 1249 (quoting NMSA 1978, § 30-3-1(C)). Crucial to the court's holding was "the other key element" of the provision at issue—that the aggravated assault be committed "with a deadly weapon." *Id.* Conviction under the statute required proof that the defendant used a deadly weapon, i.e., that he employed a weapon "capable of producing death or great bodily harm," in committing the assault. *Id.* at 1250. Thus, even the least culpable conduct giving rise to conviction under the statute "necessarily threatens the use of physical force." *Id.*

The holding of *Maldonado-Palma* echoes that of other decisions within the Tenth Circuit, which have held that assault statutes with a dangerous or deadly weapon requirement satisfied the force clause of the ACCA or Guidelines. *See United States v. Ramon Silva*, 608 F.3d 663, 669–71 (10th Cir. 2010) (New Mexico "apprehension causing" aggravated assault—assault committed by "threaten[ing] or engag[ing] in menacing conduct with a deadly weapon toward a victim, causing the victim to believe he or she was about to be in danger of receiving an immediate battery"—satisfied the ACCA's force clause); *United States v. Mitchell*, 653 F. App'x 639, 644–45 (10th Cir. 2016) (Oklahoma assault—i.e., attempted battery or threatened imminent battery with an overt act—with a dangerous weapon satisfied the force clause of the Guidelines, because "the additional element of a deadly or dangerous weapon makes an apprehension-causing assault (or an attempted-battery assault) a crime of violence, even if the simple assault would not be"); *United States v. Taylor*, 843 F.3d 1215, 1224 (10th Cir. 2016) (affirming the outcome of *Mitchell* and noting that "regardless of the type of 'dangerous weapon' that is employed by a particular defendant, the use of a 'dangerous weapon' during an assault or battery always constitutes a sufficient threat of force to satisfy the [force] clause" (internal quotation marks omitted)).

The Tenth Circuit has explained that even though such assault statutes can be violated without any actual physical contact or violence against the victim, the conduct that is criminalized "'could always lead to . . . substantial and violent contact, and thus . . . would always include as an element' the threatened use of violent force." *Ramon Silva*, 608 F.3d at 672 (quoting *United States v. Treto-Martinez*, 421 F.3d 1156, 1160 (10th Cir. 2005)). Engaging in threatening conduct toward a victim, with a dangerous or deadly weapon, "could at least put the

victim on notice of the possibility that the weapon will be used more harshly in the future, thereby constituting a threatened use of force." *Id.* (quoting *United States v. Dominguez*, 479 F.3d 345, 349 (5th Cir. 2007)).

Based on this line of case law in the Tenth Circuit, I find that § 113(a)(3) requires the use of *Johnson I*-level physical force.[9] Conviction under this provision requires more than mere de minimis force (i.e., attempted physical touching, no matter how slight) because it requires that the assault be committed both "with a dangerous weapon" and "with intent to do bodily harm." As the Tenth Circuit has made clear, the use of a dangerous weapon in the commission of an assault always constitutes the threatened use of violent, physical force because it creates the possibility of substantial and violent contact. A statute that criminalizes the use of a dangerous weapon to "intentionally strike or wound" the victim or to "display . . . force that reasonabl[y] cause[s] [the victim] to fear immediate bodily harm," when the defendant acts with the specific intent to do bodily harm, categorically qualifies as a crime of violence under the force clause of § 924(c). *Jojola*, 2000 WL 979107, at *6. It necessarily involves the use or threatened use of physical force—"that is, force capable of causing physical pain or injury to another person." *Johnson I*, 559 U.S. at 140.

---

[9] The Honorable Lourdes A. Martínez, United States Magistrate Judge, recently reached the same conclusion. *Castillo*, 16-0622 JCH/KRS, [Doc. 15] at 11–15. Likewise, other courts outside the Tenth Circuit have found that § 113(a)(3) offenses qualify as crimes of violence under the force clause of § 924(c)(3). *See United States v. Sutton*, 2016 WL 7042952, at *3 (E.D. Wash. Apr. 26, 2016) ("Unlike statutes that criminalize offensive touching, § 113(a)(3) requires that a person strike, wound, or display force with the intent of causing injury in conjunction with the subjective intent to actually cause bodily harm to the victim. That level of force is sufficient to meet the threshold of physical force."); *United States v. Scott*, 2017 WL 58577, at *2 (D. Nev. Jan. 4, 2017) ("Either of [the] two ways of committing an assault under § 113(a)(3) qualifies as a crime of violence under § 924(c)(3)(A), because they include as elements the attempt or threat to inflict injury upon the person of another, respectively."); *see also Owens v. United States*, 2016 WL 4582054, at *4 (E.D. Va. Sept. 1, 2016) (holding that § 113(a)(1), assault with intent to commit murder, satisfied the force clause because, under the common law definition of assault, to be convicted of this offense "the perpetrator must not only demonstrate to the victim a present ability to inflict injury, but must also cause the victim to have a reasonable apprehension of immediate bodily harm"). Muskett cites no case in which a court has found that § 113(a)(3) required less than *Johnson I*-level physical force.

B. Muskett's arguments to the contrary are not persuasive.

Muskett argues that § 113(a)(3) does not require *Johnson I*-level physical force because the statute does not specify *how* the assault must be carried out, only that it be done with the intent to do bodily harm. [Doc. 2] at 8–9. Physical force in the *Johnson I* sense, he argues, does not necessarily follow from intent to do bodily harm. By way of example, he suggests that a person could be convicted under this statute for mailing anthrax to a victim or poisoning someone's tea. *Id.* at 9–10. Such indirect acts, he claims, would satisfy the bodily harm element and could result in conviction under § 113(a)(3) but do not entail the "violent force" required of the force clause. *Id.* Section 113(a)(3) focuses on the *results* produced by the criminalized conduct, he claims, whereas the force clause hinges on the *use* of physical force in committing the conduct. The commission of an assault can result in bodily harm without the use of violent force; therefore, he concludes, § 113(a)(3) does not necessarily require the use of physical force.

As Muskett points out, the Tenth Circuit has held that certain state statutes, despite having a bodily injury element, failed to satisfy the force clause of the Guidelines. *United States v. Perez-Vargas*, 414 F.3d 1282, 1285 (10th Cir. 2005) (assault statute requiring that the defendant "knowingly or recklessly causes bodily injury to another person or with criminal negligence he causes injury to another person by means of a deadly weapon"); *United States v. Rodriguez-Enriquez*, 518 F.3d 1191, 1195 (10th Cir. 2008) (statute criminalizing the "nonconsensual administration of a drug, substance, or preparation" that causes harm to the victim (internal quotation marks omitted)). In those cases, the Tenth Circuit rejected the view that the word "physical" could "relate[] to the effect of the force"; instead, it "must refer to the mechanism by which the force is imparted to the 'person of another.'" *Rodriguez-Enriquez*, 518

F.3d at 1194. Thus, "intentionally exposing someone to hazardous chemicals," for example, would not constitute "physical force." *Id.* at 1195.

I am not persuaded by Muskett's argument. As an initial matter, Muskett ignores the fact that § 113(a)(3) has a dangerous weapon element—that is, conviction under § 113(a)(3) requires that the assault be committed "with a dangerous weapon." He provides no authority to support the proposition that a person could be charged, much less convicted, under § 113(a)(3) for poisoning someone. The factual scenarios he proposes are his own hypotheticals. Likewise, neither *Perez-Vargas* nor *Rodriguez-Enriquez* grappled with an assault statute requiring for conviction the use of a dangerous weapon together with the specific intent to do bodily harm.

More importantly, after *Perez-Vargas* and *Rodriguez-Enriquez* were decided, the Supreme Court decided *United States v. Castleman*, 134 S. Ct. 1405 (2014). In that case, the Court evaluated whether conviction for an offense involving knowingly or intentionally causing bodily injury to another satisfied the force clause of the definition of a "misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9). The Court held that "the knowing or intentional causation of bodily injury necessarily involves the use of physical force." 134 S. Ct. at 1414. "A 'bodily injury,'" the Court held, "must result from 'physical force.'" *Id.* This is true whether or not the force is applied directly:

> [A]s we explained in [*Johnson I*], "physical force" is simply "force exerted by and through concrete bodies," as opposed to "intellectual force or emotional force." And the common-law concept of "force" encompasses even its indirect application. . . . It is impossible to cause bodily injury without applying force in the common-law sense. Second, the knowing or intentional application of force is a "use" of force. [The defendant] is correct that under *Leocal v. Ashcroft*, the word "use" "conveys the idea that the thing used (here, 'physical force') has been made the user's instrument." But he errs in arguing that although "[p]oison

16

> may have 'forceful physical properties' as a matter of organic chemistry, . . . no one would say that a poisoner 'employs' force or 'carries out a purpose by means of force' when he or she sprinkles poison in a victim's drink[.]" The "use of force" in [the defendant's] example is not the act of "sprinkl[ing]" the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under [the defendant's] logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim. *Leocal* held that the "use" of force must entail "a higher degree of intent than negligent or merely accidental conduct"; it did not hold that the word "use" somehow alters the meaning of "force."

*Id.* at 1414–15 (internal citations omitted).

Muskett argues that *Castleman* has no bearing on this case because the analysis in that case was conducted in the course of evaluating the physical force requirement of a *misdemeanor* "crime of domestic violence," rather than the physical force requirement of a *felony* "crime of violence." *See* [Doc. 14] at 6–8. This distinction matters, Muskett contends, because the physical force required to satisfy the force clause of a misdemeanor crime of violence is less than *Johnson I*-level "violent force." *Id.* at 6–7. Indeed, the majority opinion in *Castleman* acknowledged that it was not deciding whether "causation of bodily injury necessarily entails *violent* force." 134 S. Ct. at 1413 (emphasis added); *but see id.* at 1417 (Scalia, J., concurring) ("[I]ntentionally or knowingly caus[ing] bodily injury categorically involves the use of force capable of causing physical pain or injury to another person." (second alteration in original) (internal citation and quotation marks omitted)). Nevertheless, the Court's reasoning with respect to the meaning of "use of force"—namely, its determination that such use of force may

17

be effectuated through direct *or* indirect means—extends to my interpretation here of an identically-worded phrase appearing in a similar context.[10]

*Castleman* thus undercuts the logic of *Perez-Vargas* and *Rodriguez-Enriquez* and forecloses Muskett's argument that an assault committed by, for example, mailing anthrax to a victim or poisoning someone's drink does not constitute "physical force." *See id.* at 1415 ("The 'use of force' . . . is not the act of 'sprinkl[ing]' the poison; it is the act of employing poison knowingly as a device to cause physical harm."). To be sure, "physical force" in the *Johnson I* sense means "violent force"—that is, more than de minimis touching, force "capable of causing physical pain or injury to another person." *Johnson I*, 559 U.S. at 140. Assault with a dangerous weapon with the intent to do bodily harm—whether the use of force is direct or indirect—necessarily entails the violent force required by *Johnson I*. The requirement that the assault and intent to do bodily harm be committed with a dangerous weapon makes it so. *See Taylor*, 843 F.3d at 1220 ("[T]he use of a 'dangerous weapon' during an assault or battery always constitutes a sufficient threat of force to satisfy the [force] clause."). Irrespective of whether *Castleman* stands for the proposition that *every* underlying statute with an "intentional causation of bodily injury" element necessarily requires *Johnson I*-level force, a statute—like this one—with an additional dangerous weapon requirement does require such force. Assault with a dangerous weapon will always entail the threat of force "capable of causing physical pain or injury to another person." *Johnson I*, 559 U.S. at 140.

---

[10] Other courts in the Tenth Circuit have reached the same conclusion. *See Miller v. United States*, 2016 WL 7256875, at *5–7 (D. Wyo. Dec. 15, 2016) (unpublished) (Wyoming robbery statute requiring that the defendant inflict bodily injury upon another person in the commission of the crime satisfied the Guidelines' force clause); *Pikyavit v. United States*, 2017 WL 1288559, at *4–7 (D. Utah Apr. 6, 2017) (applying the reasoning of *Castleman* to hold that Utah's assault by prisoner statute qualified under the ACCA's force clause).

## VI. Conclusion

Assault with a dangerous weapon with the intent to do bodily harm under § 113(a)(3) requires force, or the threat of force, that satisfies the physical force requirement of § 924(c)(3). There is no realistic probability that the statute would be applied to conduct falling outside the scope of the force clause. Thus, Muskett's conviction under § 924(c) was not improper, irrespective of whether the residual clause of § 924(c)(3) is unconstitutional. His motion should be denied.

**IT IS THEREFORE RECOMMENDED** that Defendant Donovan Muskett's 28 U.S.C. § 2255 Motion to Vacate Sentence [CR Doc. 56; CV Doc. 2] be **DENIED** and that case No. 16-cv-0596 MCA/SMV be **DISMISSED with prejudice**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** See **D.N.M.LR-Civ. 10.1.** **If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**